UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - x
                                          :
UNITED STATES OF AMERICA                  :      SEALED INDICTMENT
                                          :
        -v.-                              :      22 Cr.
                                          :
JOHN COSTANZO JR. and                     :
MANUEL RECIO, a/k/a "Manny,"              :
                                          :
        Defendants.                       :
- - - - - - - - - - - - - - - - - - - - - x

22 CRIM 281

## COUNT ONE
### (Conspiracy to Bribe a Public Official)

The Grand Jury charges:

### The Defendants

1.    JOHN COSTANZO JR., the defendant, has been a special agent with the Drug Enforcement Administration (the "DEA") since approximately 2004. From in or about June 2014 until on or about June 23, 2019, COSTANZO served as a Group Supervisor in the DEA's Miami Field Office in Miami, Florida. Between at least on or about June 23, 2019 through at least November 2019, COSTANZO worked at DEA headquarters in Washington, D.C.

2.    MANUEL RECIO, the defendant, was a special agent with the DEA from in or about 1997 until his retirement in or about November 2018. Prior to his retirement from the DEA, RECIO was the Assistant Special Agent in Charge for the DEA's Miami Field Office. Since retiring from the DEA, RECIO has operated his own business, Global Legal Consulting LLC ("Global Legal Consulting"), which

provides private investigative services primarily to criminal defense attorneys. At all times relevant to this Indictment, RECIO was the sole employee of Global Legal Consulting.

### Related Parties

3.    At all times relevant to this Indictment, TFO-1 was a detective with a local Florida police department. From in or about November 2010 through in or about October 2021, TFO-1 was a Task Force Officer with the DEA. A Task Force Officer is a state or local law enforcement officer who works full-time with the DEA and is deputized to exercise federal authority.

4.    At all times relevant to this Indictment, Attorney-1 was a criminal defense attorney based in Coral Gables, Florida.

5.    At all times relevant to this Indictment, Attorney-2 was a criminal defense attorney based in Miami, Florida.

6.    At all times relevant to this Indictment, Costanzo Family Member-1 was a close family member to JOHN COSTANZO JR., the defendant.

### Overview of the Bribery Scheme

7.    As set forth below, beginning in or about October 2018, and up to and including in or about November 2019, JOHN COSTANZO JR. and MANUEL RECIO, the defendants, together and with others, engaged in a bribery scheme (the "Scheme"). During the Scheme, RECIO and others provided COSTANZO various benefits in exchange for COSTANZO using his official position to benefit RECIO

2

and others on an as-needed basis, including by providing nonpublic DEA information, including information about forthcoming, sealed indictments and nonpublic investigations, such as the identities of individuals charged and the anticipated timing of arrests; and intelligence which COSTANZO obtained from a confidential DEA database. RECIO, who was working as a private investigator during the Scheme, sought the nonpublic DEA information from COSTANZO to help recruit new clients for defense attorneys, including Attorney-1 at the outset of the Scheme and, later on, Attorney-2. As part of the Scheme, and in exchange for the receipt of benefits, COSTANZO also assisted RECIO in his work as a private investigator on behalf of charged defendants.

8.    During the Scheme, JOHN COSTANZO JR. and MANUEL RECIO, the defendants, took steps to conceal the existence of the Scheme, including, for example, by structuring payments through third parties, and through COSTANZO's use of a cellphone provided by RECIO for communications related to the Scheme.

### DEA Policy on Disclosure of Non-Public Information and Acceptance of Benefits and Outside Employment

9.    The DEA maintains a Personnel Manual that contains Standards of Conduct for DEA employees. The Standards of Conduct are found in Section 2735 of the DEA Personnel Manual. Section 2735.14 mandates "Impartiality in Performing Official Duties." That section bars the "improper use of nonpublic information to

further [an employee's] own private interest or that of another, whether through advice or recommendation, or by knowing unauthorized disclosure. Non-public information includes DEA sensitive information (e.g., information that may compromise an ongoing investigation or prosecution, provide an unfair advantage to a company competing for a DOJ/DEA contract, or reveal the identities of confidential sources (CSs) or DEA Special Agents (SAs) or Task Force Officers (TFOs)) . . . ."

10. The DEA Standards of Conduct also restrict outside employment "without the express written approval of a senior DEA Headquarters official." No employment is allowed if it would "create or appear to create a conflict of interest" and "[o]utside employment by Special Agents is generally prohibited."

11. The DEA Standards of Conduct lists certain conduct that constitutes "Misuse of Official Position," including:

a. "Us[ing] his/her official position for private gain;"

b. "Glean[ing] or garner[ing] information not available to the general public and us[ing] that information for nonofficial purposes. This includes conducting a search in a database that an employee has access to due to his/her employment with DEA;" and

c. "Distribut[ing]      or      disclos[ing] information not available to the general public for nonofficial

4

purposes."

12.   DEA employees are required to receive training on the Standards of Conduct and certify their understanding of the Standards of Conduct on an annual basis. JOHN COSTANZO JR., the defendant, completed certification trainings on August 14, 2018 and August 26, 2019. MANUEL RECIO, the defendant, completed certification trainings in March 2016 and October 2016.

### The NADDIS DATABASE

13.   At all times relevant to this Indictment, JOHN COSTANZO JR., the defendant, like other DEA agents, had access to a computer database administered by the DEA called the Narcotics and Dangerous Drugs Information System, or NADDIS. NADDIS contains a large number of DEA records, with some access to reports, on individuals, including those who are or have been under investigation or associated with an investigation by the DEA. The DEA relies on NADDIS — an electronic data index — to identify records in its Investigative Reporting and Filing System ("IRFS") across all DEA offices. The DEA can input into NADDIS an individual's name, social security number, or date of birth to help locate records within IRFS. A search of IRFS using NADDIS is a worldwide search for DEA records, including records maintained at field offices, because intelligence and investigative records generated across all DEA offices are indexed into NADDIS. A DEA agent can search for the name of any individual and determine

whether there is information regarding that individual in NADDIS, including whether the individual is a subject, target or mentioned in a DEA investigation, the identity of the agent or agents investigating the individual(s), and could obtain reports concerning the status of the investigation either through NADDIS or through the case agent for the investigation. Because DEA investigations are typically kept confidential until they result in charges against individuals, and to preserve the integrity of these investigations, the information in NADDIS is confidential and DEA policy prohibits DEA agents from sharing this information except with other law enforcement agents.

14.   To prevent unauthorized use of the database, NADDIS preserves activity records for DEA employees, Special Agents, Task Force Officers, Intelligence Research Specialist and other employees who are authorized access to the database.

### The Initiation of the Scheme

15.   Prior to retiring from the DEA in November 2018, MANUEL RECIO, the defendant, met with Attorney-1 to discuss RECIO's plan to start a business following his retirement. RECIO and Attorney-1 agreed that Attorney-1 would provide regular payments to RECIO's business, and that RECIO would use connections RECIO made at the DEA — including his relationship to JOHN COSTANZO JR., the defendant — to assist Attorney-1 recruit clients. COSTANZO was aware that RECIO was discussing with Attorney-1 the formation of

RECIO's business. For instance, on October 4, 2018, Attorney-1 sent COSTANZO a text message that stated, "Met with manny [RECIO] for 3 hours." The next day, October 5, 2018, RECIO incorporated his new company, Global Legal Consulting.

16.  On or about November 12, 2018, two days after MANUEL RECIO, the defendant, retired from the DEA, Attorney-1 wrote a $5,000 check to Global Legal Consulting, which was deposited into a Global Legal Consulting bank account the same day (the "Global Legal Consulting Bank Account").

17.  Two days later, on or about November 14, 2018, MANUEL RECIO, the defendant, wrote a $2,500 check from the Global Legal Consulting Bank Account to a company co-owned by Costanzo Family Member-1. The $2,500 payment was actually for the benefit of JOHN COSTANZO, JR., the defendant. On or about November 13, 2018, COSTANZO sent text messages to Attorney-1 about repairs for a Porsche automobile that COSTANZO owned. In one of these messages, COSTANZO wrote: "Fuck it I am gonna [pay for the repairs]. Lol. I just made 2500 fuck it."

18.  At the same time that MANUEL RECIO, the defendant, made the $2,500 payment, RECIO began asking JOHN COSTANZO JR., the defendant, to provide him with nonpublic DEA information, in violation of COSTANZO's duty. On November 14 and November 15, 2018, RECIO sent COSTANZO several text messages containing a name and other information about an individual ("Individual-1") and asking

COSTANZO whether "anyone ha[s] a case on" Individual-1. In response, COSTANZO sent a message stating that he would call RECIO, and RECIO responded "ok look that up." The following day, RECIO sent COSTANZO a message asking "John can u run" the name of Individual-1 and a company with which Individual-1 was associated, and COSTANZO replied "yeah." On November 15, 2018 at approximately 10:36 a.m., COSTANZO queried those names in NADDIS. Approximately four minutes later, COSTANZO called RECIO.

## Additional Benefits Provided to COSTANZO

19.   Following the initial payment in November 2018 to JOHN COSTANZO JR., the defendant, MANUEL RECIO, the defendant, and others continued to provide benefits to COSTANZO using methods designed to conceal any direct links to the Scheme, including over $70,000 in payments to COSTANZO. For example, in or about 2019, as part of the Scheme, COSTANZO received several large payments through TFO-1:

a.   <u>Down Payment for a Condominium</u>: On or about January 17, 2019, COSTANZO exchanged over ten phone calls with RECIO, Attorney-1, and TFO-1. That same day, TFO-1 wrote a $50,000 cashier's check to Costanzo Family Member-1. Less than a month later, on or about February 13, 2019, Costanzo Family Member-1 paid $50,000 to a real estate attorney working for COSTANZO. This payment was used to fund part of a down payment for COSTANZO's purchase of a condominium. Neither COSTANZO nor Costanzo Family

Member-1 disclosed TFO-1 as the source of the $50,000 in the mortgage application and accompanying paperwork.

b.   Funds Funneled Through TFO-1's Company: In or about early 2019, TFO-1 incorporated a company ("Company-1") that RECIO used to funnel over $20,000 for the benefit of COSTANZO. On or about April 4, 2019, COSTANZO sent TFO-1 a text message requesting "the exact name of the company."  TFO-1 replied with the name of Company-1 and a photograph of the checkbook for Company-1's bank account (the "Company-1 Bank Account"). That same day, COSTANZO sent the name of Company-1 to RECIO. On or about April 22, 2019, and on or about June 5, 2019, RECIO wrote checks from Global Legal Consulting to Company-1 for $10,000 and $10,750, respectively. COSTANZO then used the Company-1 Bank Account for his personal benefit, purchasing airline tickets for himself using the Company-1 Bank Account on multiple occasions in 2019. Apart from a $1,600 cash deposit in or about July 2019, there were no other deposits into the Company-1 Bank Account during the Scheme.

20.   JOHN COSTANZO JR., the defendant, never disclosed any of these payments, or any employment by or connection to Company-1, to the DEA, as required by DEA policy.

### Actions Taken by COSTANZO

21.   As part of the Scheme, in exchange for the receipt of benefits from MANUEL RECIO, the defendant, and others, JOHN COSTANZO, JR., the defendant, took various actions in violation of

his lawful duties as a DEA special agent, including the following:

a.   Nonpublic   Indictments   and   Investigations:
COSTANZO provided nonpublic information about sealed indictments
and ongoing DEA investigations so that RECIO could use this
information to recruit indicted defendants and DEA targets as
clients for defense attorneys, including Attorney-1 and Attorney-
2. For example, on or about July 4, 2019, COSTANZO and RECIO had
a telephone call in which they discussed how RECIO could use
information from COSTANZO about new or forthcoming indictments to
recruit clients for defense attorneys. This call was recorded:

> RECIO:     So John, who got indicted this past week or two?
>
> COSTANZO:  We did [DEA Target-1] and [DEA Target-2] and [DEA
>            Target-3]. That should excite a little bit [DEA
>            Target-4], but the next indictment which is now
>            scheduled for the 25th will really . . . so I don't
>            know if you want to make your move now or wait.
>
> RECIO:     Yea I think I'll make it now.
>
> COSTANZO:  Good. And then you can screw with [DEA Target-4] a
>            little bit . . . .

During the same call, COSTANZO told RECIO that if RECIO got a
meeting with DEA Target-4, "let me know and I'll tell you what to
say."

b.   As another example, on or about April 11,
2019, MANUEL RECIO, the defendant, met with an individual ("CW-
1") who had previously been a DEA informant and was known to RECIO
as having the ability to contact targets of DEA investigations.
Unbeknownst to RECIO, CW-1 was cooperating with the Federal Bureau

of Investigation ("FBI") and was covertly recording CW-1's meeting with RECIO at the direction of the FBI. During the meeting, RECIO disclosed to CW-1 that RECIO knew about indictments against DEA targets that were not yet public. RECIO asked CW-1, in substance and in part, to contact these DEA targets to recruit them as clients for Attorney-1 and Attorney-2.

c.   Additionally, on July 31, 2019, COSTANZO provided RECIO with information about the impending and confidential arrest plans of a high-level drug trafficker ("DEA Target-5") with whom RECIO was recently in contact, and whom RECIO was trying to recruit as a client for Attorney-1. DEA Target-5 had been charged in an indictment that was not yet public and COSTANZO told RECIO that DEA Target-5 would be "[g]one in two weeks. Fucking in days." Approximately three weeks later, the DEA unsuccessfully attempted to arrest DEA Target-5.

d.   NADDIS Searches: On dozens of occasions during the Scheme, as described above, see ¶ 18, supra, RECIO and, on occasion, Attorney-1, would send COSTANZO the names of possible DEA targets that COSTANZO was not personally investigating. COSTANZO then conducted NADDIS searches for these individuals within a few days after receiving the names from RECIO and Attorney-1. COSTANZO would search NADDIS for, among other things, case details, phone numbers, addresses, and aliases. COSTANZO would then call or text RECIO or Attorney-1 to provide information

about the individuals. For example, on May 14, 2019, RECIO sent COSTANZO a text message saying "John I need your help trying to see if you could help me find any of these guys. You looked before and you said the names were to [sic] vague but [Attorney-1] is placing a lot of pressure on me." RECIO then provided a list of six names, one of which included a phone number and a suggestion to "run it." COSTANZO then queried the names in NADDIS and texted RECIO information about the individuals. On another occasion, TFO-1 conducted NADDIS searches for two names that RECIO had sent to COSTANZO the previous day.

       e.   <u>Assistance with Charged Defendants</u>: As part of the Scheme, COSTANZO also assisted RECIO in his work with defense attorneys, including Attorney-2, who were representing charged defendants. For example, in or about July 2019, COSTANZO and RECIO discussed a particular defendant indicted in the Southern District of New York ("Defendant-1"); RECIO was working as a private investigator for Defendant-1's attorney, Attorney-2. COSTANZO and RECIO discussed the fact that prosecutors had learned that Defendant-1 had deleted information from Defendant-1's phone. COSTANZO suggested, in substance and in part, that Defendant-1 should mislead the prosecutors about Defendant-1's reason for deleting the information by falsely suggesting that Defendant-1 had not wanted the government to see naked images of Defendant-1's wife.

f.    Additionally, in September 2019, COSTANZO assisted RECIO in preparing a written submission to prosecutors on behalf of one of Attorney-2's clients in an effort to obtain a reduced sentence for the client. RECIO and COSTANZO exchanged a draft of the document via email and had a phone call in which RECIO asked COSTANZO to "make it look good. This is thirty grand right here." COSTANZO stated that, for some of the sensitive information in the submission pertaining to DEA investigations, "I don't even know if I can talk about it." Nevertheless, COSTANZO continued to share information with RECIO and emailed RECIO a revised copy of the document later that day.

### Concealment of the Scheme

22.    In addition to structuring payments to conceal the Scheme, MANUEL RECIO and JOHN COSTANZO JR., the defendants, took steps to conceal their communications in furtherance of the Scheme. During the Scheme, RECIO purchased and paid for a cellphone that COSTANZO used to communicate with RECIO about nonpublic DEA information (the "Scheme Cellphone"). COSTANZO used the Scheme Cellphone to avoid using his personal phone in furtherance of the Scheme. COSTANZO also deleted numerous text messages with RECIO from his personal phone relating to the Scheme.

23.    During the Scheme, when discussing nonpublic DEA information, MANUEL RECIO and JOHN COSTANZO, JR., the defendants, expressed the need to be careful about when and what information

13

could be shared, so as to avoid revealing the Scheme.

24. For example, when speaking with CW-1 about approaching defendants in a nonpublic indictment, MANUEL RECIO, the defendant, instructed CW-1 not to approach the defendants before the indictment was public: "I want to do it once the indictment is out, so it looks natural, because people are going to wonder, 'How did you know?' Do you understand?" CW-1 later asked if RECIO already had the names of any such targets, to which RECIO replied, "Yes, but, but if I give you a name, you have to handle it very smart. Right?"

25. Similarly, on or about August 12, 2019, JOHN COSTANZO JR., the defendant had a call with MANUEL RECIO, the defendant, in which COSTANZO provided information about which DEA agent was in charge of a particular investigation, and then cautioned RECIO to be cautious in how he used the information.

COSTANZO: Hey

RECIO:    What's up my man

COSTANZO: It's a friendly [DEA Agent-1].

RECIO:    Oh it's [DEA Agent-1]. [DEA Agent-1] is where out of?

COSTANZO: [Special Operations Division]

RECIO:    Oh ok.

COSTANZO: But he's getting ready to go overseas somewhere.

RECIO:    Oh so he could work with that guy?

COSTANZO: Yeah.

RECIO:      Ok.

COSTANZO:   Yeah but relax ... don't, like, don't—let me call
            him, don't—

RECIO:      No, no we don't want to call him yet. They're just
            going to say look you know there is a team in Miami
            that knows the case agent, there are cases out of
            DC, [Attorney-]1] has the PACER information and
            this is somebody that we can work. It's a Mexican
            target if he wants to hire us he's going to have
            to, we don't need to do anything right now, I don't
            want to do anything you know?

COSTANZO:   Manny don't give any don't say any names. Don't say
            [DEA Target-6] or [DEA Target-7] or [DEA Target-
            8].

RECIO:      Of course, of course.

COSTANZO:   Just get [Attorney-2] under control because I know
            how he is.

RECIO:      Ok

COSTANZO:   Just have it for intel like this is manageable this
            is also something there might a couple of other
            Districts involved in this but [DEA Agent-1], he's
            a buddy.

     26.  When interviewed by law enforcement officers about
their involvement in the Scheme, JOHN COSTANZO, JR. and MANUEL
RECIO, the defendants, continued to conceal their participation
through lies and misstatements.

     27.  On or about November 18, 2019, JOHN COSTANZO JR.,
the defendant, participated in a voluntary interview with Special
Agents from the FBI and the Department of Justice Office of the
Inspector General. During this interview, COSTANZO falsely stated,
in substance and in part, that he had not received benefits in

exchange for providing information to defense investigators or attorneys. COSTANZO also falsely denied discussing DEA business with Attorney-1, despite having many conversations with Attorney-1 in person, by text message, or on the telephone, about DEA cases. COSTANZO also initially denied the existence of the Scheme Cellphone. Even after the Special Agents confronted him with evidence about the Scheme Cellphone, he misstated the extent to which he used it to communicate with MANUEL RECIO, the defendant.

28.   On or about November 18, 2019, MANUEL RECIO, the defendant, participated in a voluntary interview with Special Agents from the FBI and the Department of Justice Office of the Inspector General. During this interview, RECIO falsely denied providing benefits to law enforcement agents, claiming that agents would not accept benefits from him. He also falsely stated that he would never ask JOHN COSTANZO JR., the defendant, to provide RECIO with sensitive information about DEA cases, including NADDIS information. RECIO also initially denied the existence of the Scheme Cellphone. Even after the RECIO acknowledged the existence of the Scheme Cellphone, he misstated the extent to which COSTANZO used it to communicate with RECIO.

## Statutory Allegations

29.   From in or about October 2018 up to and including in or about November 2019, in the Southern District of New York and elsewhere, JOHN COSTANZO JR. and MANUEL RECIO, the defendants,

and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit an offense against the United States, to wit, to violate Title 18, United States Code, Section 201.

30.   It was a part and an object of the conspiracy that JOHN COSTANZO JR., the defendant, being a public official, would and did, directly and indirectly, corruptly demand, seek, receive, accept, and agree to receive and accept anything of value from another person in return for being induced to do and to omit to do an act in violation of his lawful duty, to wit, COSTANZO, a DEA employee and supervisor, received benefits from MANUL RECIO, the defendant, and others, in exchange for COSTANZO sharing nonpublic DEA information, including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assisting RECIO on cases involving charged defendants, in violation of COSTANZO's duties as a DEA employee.

31.   It was further a part and an object of the conspiracy that MANUEL RECIO, the defendant, and others would and did, directly and indirectly, corruptly give, offer, and promise a thing of value to a public official with intent to induce such public official to do an act and omit to do an act in violation of his lawful duty, to wit, RECIO and others provided benefits to JOHN COSTANZO JR., the defendant, a DEA employee and supervisor, in exchange for COSTANZO sharing nonpublic DEA information,

including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assisting RECIO on cases involving charged defendants, in violation of COSTANZO's duties as a DEA employee.

<u>Overt Acts</u>

32. On or about April 22, 2019, MANUEL RECIO, the defendant, wrote a check for $10,000 from Global Legal Consulting to Company-1.

33. On or about April 30, 2019, JOHN COSTANZO JR., the defendant, searched the NADDIS database for a name that MANUEL RECIO, the defendant, had sent him on or about the same day.

34. On or about July 16, 2019, JOHN COSTANZO JR., the defendant, placed a call to MANUEL RECIO, the defendant, from the Southern District of New York to discuss nonpublic DEA information that COSTANZO could provide to RECIO

(Title 18, United States Code, Section 371).

**COUNT TWO**
**(Public Official Accepting a Bribe: Costanzo)**

The Grand Jury further charges:

35. The allegations set forth above in Paragraphs 1 through 28 and 32 through 34 are realleged and incorporated by reference as if set fully forth herein.

36. From in or about October 2018 up to and including in or about November 2019, in the Southern District of New York

and elsewhere, JOHN COSTANZO JR., the defendant, being a public official, did corruptly demand, seek, receive, accept, and agree to receive and accept anything of value from another person in return for being induced to do and to omit to do an act in violation of his lawful duty, to wit, COSTANZO, a DEA employee and supervisor, received benefits from MANUEL RECIO, the defendant, and others, in exchange for COSTANZO sharing nonpublic DEA information, including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assisting RECIO on cases involving charged defendants, in violation of COSTANZO's duties as a DEA employee.

(Title 18, United States Code, Sections 201(b)(2)(C) and 2).

## COUNT THREE
### (Bribery of a Public Official: Recio)

The Grand Jury further charges:

37.   The allegations set forth above in Paragraphs 1 through 28 and 32 through 34 are realleged and incorporated by reference as if set fully forth herein.

38.   From in or about October 2018 up to and including in or about November 2019, in the Southern District of New York and elsewhere, MANUEL RECIO, the defendant, did, directly and indirectly, corruptly give, offer, and promise a thing of value to a public official with intent to induce such public official to do an act and omit to do an act in violation of his lawful duty, to

wit, RECIO and others provided benefits to JOHN COSTANZO JR., the defendant, a DEA employee and supervisor, in exchange for COSTANZO sharing nonpublic DEA information, including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assisting RECIO on cases involving charged defendants, in violation of COSTANZO's duties as a DEA employee..

(Title 18, United States Code, Sections 201(b)(1)(C) and 2).

### COUNT FOUR
**(Conspiracy to Commit Honest Services Wire Fraud)**

The Grand Jury further charges:

39.   The allegations set forth above in Paragraphs 1 through 28 and 32 through 34 are realleged and incorporated by reference as if set fully forth herein.

40.   From in or about October 2018 up to and including in or about November 2019, in the Southern District of New York and elsewhere, JOHN COSTANZO JR. and MANUEL RECIO, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1343 and 1346.

41.   It was a part and an object of the conspiracy that JOHN COSTANZO JR. and MANUEL RECIO, the defendants, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and to

deprive the public and the DEA of their intangible right to the honest services of COSTANZO, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Sections 1343 and 1346, to wit, CONSTANZO, a DEA employee and supervisor, and REICO agreed that CONSTANZO would share nonpublic DEA information, including information about sealed indictments, forthcoming arrests, investigations, and the results of DEA database searches, and assist RECIO on cases involving charged defendants in exchange for bribes paid at the direction of REICO and others, and did transmit and cause to be transmitted interstate email and telephonic communications in furtherance of their scheme to defraud.

(Title 18, United States Code, Section 1349.)

## COUNT FIVE
### (Honest Services Wire Fraud)

The Grand Jury further charges:

42. The allegations set forth above in Paragraphs 1 through 28 and 32 through 34 are realleged and incorporated by reference as if set fully forth herein.

43. From in or about October 2018 up to and including in or about November 2019, in the Southern District of New York and elsewhere, JOHN COSTANZO and MANUEL RECIO, the defendants,

willfully and knowingly, having devised and intending to devise a
scheme and artifice to defraud, and to deprive the public and the
DEA of their intangible right to the honest services of COSTANZO,
would and did transmit and cause to be transmitted by means of
wire communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds for the purpose of executing
such scheme and artifice, to wit, CONSTANZO, a DEA employee and
supervisor, shared nonpublic DEA information, including
information about sealed indictments, forthcoming arrests,
investigations, and the results of DEA database searches, and
assisted RECIO on cases involving charged defendants in exchange
for bribes paid at the direction of REICO and others, and did
transmit and cause to be transmitted interstate email and
telephonic communications in furtherance of their scheme to
defraud.

(Title 18, United States Code, Sections 1343, 1346, and 2.)

### FORFEITURE ALLEGATIONS

44.    As a result of committing the offenses alleged in
Counts One through Five this Indictment, JOHN COSTANZO JR. and
MANUEL RECIO, the defendants, shall forfeit to the United States,
pursuant to Title 18, United States Code, Section 981(a)(1)(C),
and Title 28, United States Code, Section 2461(c), all property,
real and personal, which constitutes or is derived from proceeds
traceable to the commission of the offenses alleged in Counts One

through Five, including but not limited to a sum of money in United States currency representing the amount of proceeds traceable to the commission of said offenses.

### **Substitute Asset Provision**

45. If any of the property described above as being subject to forfeiture, as a result of any act or omission of JOHN COSTANZO JR. and MANUEL RECIO, the defendants,

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p); and Title 28, United States Code, Section 2461 to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)


_____
FOREPERSON

_____
DAMIAN WILLIAMS
United States Attorney

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

### - v. -

### JOHN COSTANZO JR. and MANUEL RECIO,

#### Defendants.

## SEALED INDICTMENT

### 22 Cr._____

(18 U.S.C. §§ 201, 371, 1343, 1346, 1349,
and 2.)

DAMIAN WILLIAMS
United States Attorney

*Brian Carr*

5/18/22  FILED INDICTMENT. WARRANT ISSUED

*COTT, USMJ*