**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JOHN COSTANZO JR. and<br>MANUEL RECIO,<br><br>　　　　　　　　　　　Defendants. | Case No. 22-CR-281 (JPO) |

**<u>DAVID MACEY'S MEMORANDUM OF LAW IN OPPOSITION TO THE
GOVERNMENT'S MOTION TO APPLY THE CRIME-FRAUD EXCEPTION</u>**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

APPLICABLE LAW ........................................................................................................... 5

ARGUMENT ...................................................................................................................... 7

    I.    The Government Has Failed to Meet Its Burden to Identify Particular
    Communications Made in Furtherance of a Crime.................................................. 7

    II.    The Government's Proposed Procedure is Not Reasonably Designed to Protect
    Privilege Holders' Interests and Minimize Burden. ............................................... 9

    III.    There is a Reasonable Alternative That Better Protects Privilege Holders'
    Interests. ............................................................................................................... 13

    IV.    *In Camera* Review is Unjustified ....................................................................... 15

CONCLUSION .................................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Cty. of Erie*,
    546 F.3d 222 (2d Cir. 2008)...................................................................6

*Drummond Co. v. Conrad & Scherer, LLP*,
    885 F.3d 1324,1338 (11th Cir. 2018) .............................................9, 14

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*,
    731 F.2d 1032 (2d Cir. 1984)..............................................................6, 8

*In re Grand Jury Subpoenas Dated Mar. 2, 2015*,
    628 F. App'x 13 (2d Cir. 2015) ............................................................6

*In re Grand Jury Subpoenas Duces Tecum*,
    798 F.2d 32 (2d Cir. 1986)....................................................................8

*MacNamara v. City of New York*,
    No. 04-CV-9216, 2007 WL 3196295 (S.D.N.Y. Oct. 20, 2007)............7

*MacNamara v. City of New York*,
    No. 04-CV-9216, 2008 WL 186181 (S.D.N.Y. Jan. 18, 2008) ............7

*Moody v. Internal Revenue Service*,
    654 F.2d 795 (D.C. Cir. 1981) ...............................................1, 9, 10, 14

*In re Richard Roe, Inc.*,
    168 F.3d 69 (2d Cir. 1999)...........................................................6, 7, 13

*In re Richard Roe, Inc.*,
    68 F.3d 38 (2d Cir. 1995)....................................................................6, 8

*In re Sealed Case*,
    107 F.3d 46 (D.C. Cir. 1997) ................................................................9

*United States v. Chervin*,
    No. 10-CR-918, 2011 WL 4424297 (S.D.N.Y. Sept. 21, 2011)............8

*United States v. Jacobs*,
    117 F.3d 82 (2d Cir. 1997), abrogated on other grounds by *Loughrin v. United States*, 134 S. Ct. 2384 (2014) ..............................................................6, 7

*United States v. Spinosa*,
    No. 21-CR-206, 2021 WL 2644936 (S.D.N.Y. June 28, 2021) ............6

*United States v. Zolin*,
   491 U.S. 554 (1989)..............................................................................................................13

*Upjohn Co. v. United States*,
   449 U.S. 383 (1981)...............................................................................................................5

## INTRODUCTION

Four years ago, the Government used wiretaps and search warrants to obtain communications involving a named defendant in this case, Manuel Recio.  ECF No. 98.  At the time, Mr. Recio was a recently-retired DEA Agent working as a private investigator for a number of Miami-based criminal defense lawyers including David Macey and Luis Guerra.  The Government withheld certain of Mr. Recio's communications with Mr. Macey or Mr. Guerra (the "Defense Lawyers") from the team prosecuting Mr. Recio (the "Prosecution Team") on grounds of privilege (the "Withheld Communications"), but now moves this Court to vitiate the privilege pursuant to the crime-fraud exception (the "Motion").

The Government's Motion presents an unorthodox application of the crime-fraud exception.  In the typical case, the exception applies where a client has abused the attorney-client relationship in furtherance of a crime or fraud *being perpetrated by the client*.  The client is the bad actor, and the crime-fraud exception prevents the bad actor from invoking the privilege to shield evidence of his misconduct from discovery.  Here, in contrast, the individuals who hold the privilege (the "Privilege Holders") are not alleged to have been involved in any misconduct at all.  They are not alleged to have known about, let alone been involved in, any crime involving Mr. Recio or the other named defendant in this case, DEA Agent John Costanzo.  They are innocent bystanders to any bribery scheme, and yet far from indifferent to the outcome of the Motion for a very simple reason: if the Government vitiates their privilege, it could potentially use disclosed communications as evidence *against a Privilege Holder* in criminal investigations having nothing to do with this one.  While it does not appear that the Second Circuit has addressed such an unusual application of the crime-fraud exception, other circuits have urged caution.  *See, e.g., Moody v. Internal Revenue Service*, 654 F.2d 795, 801 (D.C. Cir. 1981) ("the client's interest in preventing

disclosures about his case may survive the misfortune of his representation by an unscrupulous attorney").

Mr. Macey owes an ethical duty to protect his clients' interests in their privileged communications, and hereby opposes the Government's Motion on two grounds.[1]   *First*, the Government has failed to meet its burden to establish probable cause to conclude that *particular* communications were made with intent to further the alleged crime.  Indeed, the Government has conceded as much, confirming in correspondence with undersigned counsel that its Filter Team withheld roughly 8,000 documents on grounds of privilege but has undertaken no effort to identify which of them were made in furtherance of a crime and which were not.  *See* Exhibit A (email from S. Swett, dated January 25, 2024).  The Government cannot invoke the crime-fraud exception until the Filter Team has undertaken this basic, foundational work.

*Second*, to the extent the Motion is not denied outright, a procedure will be required to protect the innocent Privilege Holders' interests in their privileged materials, and to cabin any disclosure to only those communications made in furtherance of the alleged crime.  The Government, however, proposes a blunderbuss approach (the "Proposed Procedure") that would accomplish neither goal.  Mot. at 23.  Under the Proposed Procedure, notice to Privilege Holders would be both under-inclusive and over-inclusive, and any Privilege Holder's failure to promptly "raise issues" would result in broad disclosure of their privileged communications—including communications unrelated to the crime described in the Motion—for unfettered use by any

---

[1] Mr. Macey submits this Opposition in furtherance of his ethical duties while vigorously disputing that any of the underlying, privileged communications would demonstrate that Mr. Macey paid bribes to Agent Costanzo for confidential information.  Mr. Macey did no such thing.  Mr. Macey hired Mr. Recio, a former DEA Agent, to work as an investigator and assist with his cases—an arrangement that is common in the criminal defense bar.  To the extent Mr. Recio crossed any lines with Agent Costanzo, Mr. Macey was not aware.

Government prosecution team.  The Government would construe a Privilege Holder's silence as implied waiver, which is wrong.

In this Opposition, Mr. Macey addresses each of the two bases on which he opposes the Government's Motion, proposes a reasonable alternative to the Government's Proposed Procedure and, finally, explains why the matter is not ripe for *in camera* review.

## BACKGROUND

In July 2019, the Government obtained authorization to intercept communications on cellphones belonging to Mr. Recio and Mr. Guerra.  The Government twice renewed the wiretap on Mr. Recio's phone but did not renew the wiretap on Mr. Guerra's phone, suggesting that the Government did not intercept communications evidencing a crime on the attorney's phone.[2]  ECF 98.  Between September 2019 and April 2020, the Government obtained search warrants for Mr. Recio's iPhone and email accounts.  *Id.*  A Filter Team reviewed the wiretaps on Mr. Recio's phone and his electronic communications for privilege, and released to the Prosecution Team only those communications determined to be not privileged.  *Id.*  This process resulted in an unknown number of wiretaps and approximately 8,000 other electronic communications (7,352 WhatsApp messages and approximately 650 other electronic communications) being withheld from the Prosecution Team on grounds of privilege.  Mot. at 1.  These are the communications referred to herein as the Withheld Communications.

The Filter Team has not reviewed the 8,000+ Withheld Communications with an eye toward identifying those that were made in furtherance of a crime and those that were not.  *See* Exhibit A (admitting that the Filter Team "has made no determinations regarding the applicability of the crime-fraud exception" to the Withheld Communications).  Thus, it is not known at this time

---

[2] The Government is not seeking to apply the crime fraud exception to communications intercepted on Mr. Guerra's phone, and the Government did not wiretap Mr. Macey's phone.

whether *any* of the Withheld Communications were made in furtherance of a crime. Nor has the Filter Team undertaken any work to identify which of Mr. Macey's or Mr. Guerra's clients (or potential clients) hold a privilege over any Withheld Communications. *See* Exhibit A.

Instead of asking the Filter Team to undertake the basic work that Filter Teams typically perform, the Prosecution Team asks the Court "to rule that the crime-fraud exception ... applies" generally to the entire basket of Withheld Communications, and to permit the Prosecution Team "to access, review and utilize" privileged communications. Mot. at 1. The Government proposes a procedure pursuant to which Mr. Macey would identify individuals who may hold a privilege over communications implicated by the Motion while refusing to provide Mr. Macey with the documents that would enable him to do so. Mot. at 23. Instead, the Government asks Mr. Macey to do his best to identify such persons based, one would assume, on his memory and client files. Any list that he generates would therefore be under-inclusive (missing clients whose rights are implicated), but also over-inclusive (including clients who hold a privilege over communications having nothing to do with Agent Costanzo).

The Government then proposes that Mr. Macey provide notice to the individuals on his list. But Mr. Macey could not inform such individuals that their privilege is in fact implicated by the Motion because Mr. Macey does not know that to be the case. The most he could say is that they *may* hold a privilege over documents implicated by the Government's Motion, that Mr. Macey does not know for sure, and that he does not know the contents of the documents at issue.

Finally, except to the extent a Privilege Holder comes forward to "raise issues," the Government proposes that the Filter Team be authorized to release to the Prosecution Team, for unfettered use, *all* privileged communications that had been withheld, irrespective of whether the communication was made in furtherance of a crime. Mot. at 23. In other words, the Government

would construe silence as waiver.  But given that Mr. Macey and Mr. Guerra are criminal defense lawyers, Privilege Holders may not promptly come forward for any of a number of reasons.  The Privilege Holders are anticipated to be individuals at all stages of the criminal process, whether under investigation, under indictment, planning for trial, and/or cooperating with the Government. They would include clients, former clients, and even individuals who were *never* clients.[3]  Some would have means.  Some may be indigent.  Some may be in prison, while others may prove difficult to reach.  Those who are cooperating may be disinclined to dispute the Motion for fear that doing so may complicate their efforts to obtain cooperation credit with respect to investigations having nothing to do with this one (particularly given that, without access to the underlying documents, the client would not even be sure that his rights are truly or significantly implicated by the Motion).  Notwithstanding all of these reasons why a Privilege Holder may not come forward, the Government proposes that failure to do so would result in a blanket disclosure of Withheld Communications, including those having nothing at all to do with Agent Costanzo. The Government's Motion cites no precedent for such a procedure, and no case law supporting why silence, in these circumstances, should be deemed waiver.

## APPLICABLE LAW

The attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law," and "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Notwithstanding, "communications that otherwise would be protected by the attorney-client privilege" are not protected if they are "in furtherance of contemplated or ongoing criminal or fraudulent conduct."

---

[3]The underlying Privilege Holders may include prospective clients who entrusted Mr. Macey with confidential information that he subsequently discussed with Mr. Recio.

*In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984) (citations omitted). "Although there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud." *United States v. Spinosa*, No. 21-CR-206, 2021 WL 2644936, at *5 (S.D.N.Y. June 28, 2021) (citing *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) ("*Roe I*")).

"A party wishing to invoke the [crime-fraud] exception must prove (1) 'that the client communication . . . in question was itself in furtherance of the crime or fraud' and (2) 'probable cause to believe that the particular communication with counsel . . . was intended in some way to facilitate or to conceal the criminal activity.'" *In re Grand Jury Subpoenas Dated Mar. 2, 2015*, 628 F. App'x 13, 14 (2d Cir. 2015) (quoting *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) ("*Roe II*")); *see also Roe I*, 68 F.3d at 40 ("[A] party seeking to invoke the crime-fraud exception must at least demonstrate that there is probable cause to believe that a crime or fraud has been attempted or committed and that the communications were in furtherance thereof." (citation omitted)).

The crime-fraud exception has "a narrow and precise application." *United States v. Jacobs*, 117 F.3d 82, 88 (2d Cir. 1997), abrogated on other grounds by *Loughrin v. United States*, 134 S. Ct. 2384 (2014). The Second Circuit has cautioned that "[g]iven that the attorney-client privilege . . . play[s] a critical role in our judicial system, the limited exceptions to [it] should not be framed so broadly as to vitiate much of the protection [it] afford[s]." *Roe II*, 168 F.3d at 71 (citations omitted); *see also In re Cty. of Erie*, 546 F.3d 222, 228 (2d Cir. 2008) ("rules which result in the waiver of this privilege and thus possess the potential to weaken attorney-client trust, should be formulated with caution"). Additionally, "with strong emphasis on intent, the crime-fraud

exception applies 'only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the criminal activity.'" *Jacobs*, 117 F.3d at 88 (quoting *In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d 32, 34 (2d Cir. 1986)).

## ARGUMENT

### I.  The Government Has Failed to Meet Its Burden to Identify Particular Communications Made in Furtherance of a Crime.

The most notable aspect of the Government's Motion is what it is missing: the identification of Withheld Communication that the Government contends were intentionally made in furtherance of a crime.  This omission prompted undersigned counsel to reach out to the Prosecution Team to ask whether the Filter Team had made an assessment as to which Withheld Communications were made in furtherance of the asserted crime, and which were not.  In response, the Prosecution Team confirmed that the Filter Team has "made no determinations regarding the applicability of the crime-fraud exception."  *See* Exhibit A.

The law requires more.  As noted, the crime fraud exception is a "narrow" one that demands "precise application."  *Jacobs*, 117 F.3d at 88.  It requires the Government to demonstrate that there is "probable cause to believe that *the particular communication* with counsel . . . was intended in some way to facilitate or to conceal the criminal activity."  *Roe II*, 168 F.3d at 71 (emphasis added); *see also MacNamara v. City of New York*, No. 04-CV-9216, 2007 WL 3196295, at *2 (S.D.N.Y. Oct. 20, 2007) ("*MacNamara I*") ("[T]he crime-fraud exception does not create a general waiver of the attorney-client privilege. The [requesting parties] must ... demonstrate that *specific communications* were made in furtherance of a fraud." (emphasis added)); *MacNamara v. City of New York*, No. 04-CV-9216, 2008 WL 186181, at *2 (S.D.N.Y. Jan. 18, 2008) ("*MacNamara II*") ("[A]pplication of the crime-fraud exception requires a showing of probable

cause to believe that *each of the particular attorney-client communications at issue* was used in furtherance of a crime or fraud." (quotation and alteration omitted)(emphasis added)).

These cases make clear that, even assuming there is probable cause to believe that Mr. Recio engaged in a crime,[4] the Government bears the additional burden of establishing that *specific* communications were intentionally made in furtherance of such crime.  The Government has failed to do that.  Instead, the Government asks this Court to generally conclude that the basket of Withheld Communications includes some number that are subject to the exception.  This blanket approach is insufficient to meet the Government's burden and, to our knowledge, without precedent.

Notably, even if the Government were to have established that Withheld Communications "relate" to the alleged crime—which it has not done—it would not be enough.  *United States v. Chervin*, No. 10-CR-918, 2011 WL 4424297, at *3 (S.D.N.Y. Sept. 21, 2011) (citing *Jacobs*, 117 F.3d at 88) ("Communications that merely relate to the fraudulent scheme will not trigger the crime-fraud exception to the attorney-client privilege.")  Nor would it be enough for the Government to establish that Withheld Communications are "relevant" to the scheme.  *Roe I*, 68 F.3d at 40-41 ("Because a simple finding of relevance does not demonstrate a criminal or fraudulent purpose, it does not trigger the exception.").  Rather, to invoke the exception, the Government must identify *particular communications* that were purposefully made *with the intent* to further a criminal scheme.  *See, e.g., In re Grand Jury Subpoenas Duces Tecum*, 798 F.2d at 34 (reversing compulsion order for failure "to show the requisite purposeful nexus"); *In re Grand Jury 1983*, 731 F.2d at 1039 (the crime or fraud must "have been the objective of the client's

---

[4] Whether the Government has established probable cause to believe that *Mr. Macey* knowingly participated in a criminal scheme presents a different question, but one that the Court need not reach to resolve the Government's Motion.

communication"); *see also In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997) ("[T]he Government had to demonstrate that the Company sought the legal advice with the intent to further its illegal conduct. Showing temporal proximity between the communication and a crime is not enough."). Given that the Filter Team has not undertaken work to identify particular communications made in furtherance of the alleged crime, the Government's Motion must be denied. *See* Exhibit A.

## II.    The Government's Proposed Procedure is Not Reasonably Designed to Protect Privilege Holders' Interests and Minimize Burden.

In the event the Government's Motion is not denied outright, reasonable care must be taken to ensure that (a) Privilege Holders are provided notice of the Motion and an opportunity to be heard, and (b) any disclosure of privileged material is narrowly tailored to only those communications made in furtherance of the crime. Case law counsels that the crime-fraud exception must be narrowly and carefully applied here. And here, extra prudence is warranted given the unusual posture of the Government's Motion. The Privilege Holders are not alleged to have been involved in the conduct described in the Motion, but may themselves have criminal exposure on separate, unrelated matters. Accordingly, their interest in maintaining privilege may outweigh the Government's interest in disclosure here. *See, e.g., Moody*, 654 F.2d at 801 (where client is uninvolved in an attorney's misconduct, "[n]o court should order disclosure [that] would traumatize the adversary process more than the underlying legal misbehavior."); *accord Drummond Co. v. Conrad & Scherer, LLP*, 885 F.3d 1324,1338 (11th Cir. 2018) (agreeing with *Moody*'s adoption of a "balancing test to weigh the client's interest in secrecy against the reasons for disclosure").

Whereas precedent and prudence demand a careful approach, the Government proposes a procedure that is anything but. Mot. at 23. Its Proposed Procedure is flawed in at least four

9

respects: (a) it is not reasonably designed to provide notice to all impacted Privileged Holders; (b) it would unnecessarily impose burden on individuals whose rights are *not* implicated by the Motion; (c) it would result in unwarranted disclosure of privileged communications not made in furtherance of any crime; and (d) it does not protect Privilege Holders against use of disclosed materials in unrelated criminal proceedings.

**Inadequate Notice.**  At the risk of stating the obvious, it is critical that notice be provided to as many Privilege Holders as is reasonably possible.  Privilege Holders may wish to challenge whether and how the crime-fraud exception applies where, as here, the client who holds the privilege is uninvolved in the crime or fraud alleged to have occurred. *See, e.g., Moody*, 654 F.2d at 801.  In addition (or in the alternative), Privilege Holders may seek to ensure that any disclosure is limited to solely those communications purposefully made in furtherance of the scheme, and that disclosed documents may not be used in prosecutions against the Privilege Holder.  To advance these arguments, they must first receive notice.

Yet, the Government's Proposed Procedure is not reasonably designed to afford notice to all Privilege Holders whose rights are implicated by the Motion.  The Government asserts that Mr. Macey (and Mr. Guerra) should identify the Privilege Holders to whom notice is provided because they are "best positioned to know which of their former or current clients would be impacted by the motion," (Mot. at 23), but this is incorrect.  The Government is best positioned to know the identity of impacted Privilege Holders *because the Government has the Withheld Communications*.  The Government need only ask the Filter Team to look at them to identify the clients (and potential clients) whose rights are implicated.

Without access to the Withheld Communications, the Defense Lawyers are not able to do that.  Mr. Macey would need to search his memory and client files to generate a list of individuals

whose cases he may have discussed with Mr. Recio approximately five years ago, which is no easy task.  Mr. Macey may not remember, for example, having discussed with Mr. Recio privileged information concerning a client who had pled guilty years eight years ago (in 2016, say) and was cooperating with the government in 2018, in anticipation of receiving a sentence reduction.  Or Mr. Macey may have long forgotten discussing with Mr. Recio privileged information concerning a prospective client who ended up not proceeding with the representation.  If the goal is to provide notice to as many impacted Privilege Holders as is reasonably possible—as it should be—a better procedure would be rooted in the content of the Withheld Communications, not Mr. Macey's memory and files.

**Undue Burden.**  While any list of Privilege Holders generated by Mr. Macey would surely be under-inclusive, it would also be *over-inclusive*.  This is itself a problem.  It is undoubtedly the case that many of Mr. Macey's clients from the relevant time period are not implicated by this Motion.  Mr. Macey may not have discussed their case with Mr. Recio at all.  Or, Mr. Macey may have engaged in privileged communications with Mr. Recio about the client's case that had nothing to do with any scheme involving Agent Costanzo.  For these clients, notice of the Government's Motion would impose an unnecessary, undue burden.  Imagine how this would play out:  Mr. Macey would inform all of his clients, former clients, and some prospective clients that (a) the Government may be seeking to obtain access to their privileged communications, (b) Mr. Macey doesn't know for sure whether their privilege is implicated, and (c) Mr. Macey doesn't know the content of any communications at issue.  Mr. Macey would further inform them that they should consider retaining separate counsel to discuss the issue and/or work through potential conflict/waiver issues.  Notably, a client who is presently cooperating with the Government may reasonably want to consider whether opposing the Government's Motion in this case might

negatively impact any cooperation credit the individual might receive in their separate criminal case. The client would then need to decide how and whether to oppose the Motion.

This is quite a burden to impose on someone whose privilege is not in fact implicated by the Motion. It is particularly unfair for clients that are indigent and/or imprisoned. And it is also unnecessary—it could be avoided entirely if the Filter Team simply reviewed the documents and identified those clients whose interests *are* implicated, as Filter Teams ordinarily do.

**Overbroad Disclosure.** The Proposed Procedure would also result in overbroad disclosure of privileged communications that are not in furtherance of the criminal conduct alleged in the Motion. This is because the Government contemplates that, for those Privilege Holders that do not come forward and "raise concerns," (Mot. at 23), the Filter Team would simply transfer to the Prosecution Team *all* of that client's privileged communications, irrespective of whether such communications had been made in furtherance of the alleged crime. The Prosecution Team would receive, for example, privileged communications that have nothing at all to do with Mr. Costanzo.

At bottom, the Government would construe all Privilege Holders' silence as implied waiver. That is wrong. A Privilege Holder's silence should not be construed as waiver for any of a number of reasons including, but not limited to, indigence, imprisonment, or fear of coming forward in this case due to concern, for example, that doing so would negatively impact the resolution of their own criminal matter or hurt their cooperation credit. Indeed, many clients may not come forward simply because they do not really know whether their interests are at issue here: as described above, the Government is not providing the Withheld Communications to Mr. Macey, so Mr. Macey would be unable to inform the Privilege Holder whether their interests *actually are* implicated by the Motion, or to what extent. The most Mr. Macey could tell a client is that his communications *might* be implicated by the Motion, and that the privileged communications at

12

issue *may* be significant.  So advised, many of the clients may not take prompt action or come forward.

The Government's blunderbuss approach to disclosure is wrong as a matter of law and equity.  *Roe II*, 168 F.3d at 71 (the Government must demonstrate that there is "probable cause to believe that *the particular communication* with counsel ... was intended in some way to facilitate or to conceal the criminal activity.").

**Inadequate Protection.**  Finally, the Proposed Procedure does nothing to prevent the Government from using privileged communications in unrelated criminal proceedings against the Privilege Holder.  Again, the Privilege Holders are anticipated to be individuals at all stages in the criminal process.  It is unfathomable to think that a Privilege Holder might be tried and convicted on the basis of a privileged communication that was turned over to the Government solely because the client's lawyer's investigator engaged in misconduct of which the client had no knowledge.  This is not the purpose for which the crime fraud exception was intended.  *See United States v. Zolin*, 491 U.S. 554, 563 (1989) (the "purpose" of the exception is to assure that clients do not abuse the attorney-client privilege "for the purpose of getting advice for the commission of a fraud or crime").

III.    **There is a Reasonable Alternative That Better Protects Privilege Holders' Interests.**

We start from the premise that any procedure adopted here should be designed to ensure that (a) the list of Privilege Holders to whom notice is provided is as precise, accurate and comprehensive as reasonably possible; (b) any disclosure of privileged communications is narrowly tailored to only those communications purposefully made in furtherance of a crime; and (c) Privilege Holders are protected against use of disclosed communications in prosecutions of the Privilege Holder.

13

To create an accurate and comprehensive list of Privilege Holders to whom notice is provided, the Filter Team should first identify the specific subset of Withheld Communications that the Government contends were made in furtherance of the criminal conduct described in the Motion. Once the particular communications have been identified, the Filter Team could then generate a list of the impacted Privilege Holders. To the extent the identity of the Privilege Holder cannot be ascertained from the face of the document—for example, if the communication reflects only a first name (or no name)—the Filter Team can work with counsel to the Defense Lawyers to identify such client.

Mr. Macey (and Mr. Guerra) could then provide notice to the list of Privilege Holders. If any Privilege Holder cannot be reached, Mr. Macey (and Mr. Guerra) will discuss with the Filter Team and raise with the Court, as appropriate. In connection with provision of notice, the Filter Team should provide the privileged documents at issue to counsel to Mr. Macey (or Mr. Guerra) and/or the Privilege Holder. It would make little sense to ask a Privilege Holder whether he intends to assert his privilege over communications without knowing what the communication contains.[5] And, the client may not be in position to evaluate whether the crime-fraud exception should apply without knowing the significance of the privileged communication to his own criminal case. *See, e.g., Moody*, 654 F.2d at 801 (acknowledging that a client may, under certain circumstances, assert privilege over communications that might otherwise be subject to the crime-fraud exception due to attorney misconduct); *Drummond*, 885 F.3d at 1338 (agreeing with *Moody*'s adoption of a "balancing test").

---

[5] While the Government has refused to provide the Withheld Communications to Mr. Macey and Mr. Guerra, there is no good reason to withhold them from the Defense Lawyers at this juncture of this case. Given that the Government has already gone to trial against Agent Costanzo and Mr. Recio, its case is no secret.

Following notice, Privilege Holders should be afforded at least three weeks to consult with counsel (which may or may not be Mr. Macey or Mr. Guerra), and to respond. Any disclosure should be tailored to only those communications purposefully made in furtherance of a crime or fraud. And finally, the Prosecution Team in this case should be walled off from the teams prosecuting the Privilege Holders, and the Government's use of the disclosed materials should be limited to use in this case.

## IV.    *In Camera* Review is Unjustified

The Government half-heartedly requests that the Court conduct an *in camera* review of the Withheld Communications. This request is not ripe. Given that the Filter Team has not undertaken to review the wiretaps or 8,000 Withheld Communications to identify which are in furtherance of the alleged crime and which are not, the Government cannot impose upon the Court to do so. Nor can it impose on Mr. Macey or Mr. Guerra to make up a list of clients to notify, and impose on those clients the burden of coming forward to raise issues in order to prevent mass disclosure of privileged communications. The Government's Motion should be seen for what it is—an attempt to shift the burden of filtering privileged communications away from the Filter Team to others, even at the risk of resulting in unwarranted intrusion on the oldest and most important of privileges available under common law. Under these circumstances, *in camera* is not warranted.

**CONCLUSION**

Mr. Macey respectfully submits that the Government's Motion be denied or, in the alternative, that the Court adopt the alternative procedure described herein.

Date: February 19, 2024

KING & SPALDING LLP

*/s/ Andrew Michaelson*

Andrew Michaelson
King & Spalding LLP
1185 Avenue of Americas
34th Floor
New York, NY 10036
Tel: (212) 790-5358
amichaelson@kslaw.com

*Attorney for David Macey*

16